**FILED**
**CLERK**

8/31/2021 2:40 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JAMES JACOBS,

                                    Plaintiff,

                    -against-

DETECTIVE DARRYL AIKEN, *et al.*,

                                    Defendants.
-------------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**
16-CV-1242 (GRB)(JMW)

**WICKS,** Magistrate Judge:

Incarcerated *pro se* plaintiff James Jacobs ("Plaintiff") commenced this action pursuant to 42 U.S.C. § 1983 against Defendants Detective Darryl Aiken, the County of Nassau, the Village of Hempstead, Armor Correctional Health of New York, Inc., and John Doe[1] alleging, *inter alia*, that Defendants violated his constitutional rights under the Fourth Amendment by conducting a warrantless search of an apartment he was visiting, falsely arresting him, and using excessive force to effectuate that arrest. Before the Court on referral from the Honorable Gary R. Brown is Defendant Aiken's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, seeking dismissal of the fourth complaint filed in this action.[2] For the reasons that follow, the undersigned respectfully recommends that Defendant Aiken's motion for summary judgment be granted, and that the claims asserted against him in the latest amended complaint now be dismissed.

<b>FACTUAL BACKGROUND</b>

The facts giving rise to this lawsuit stem from a single incident which culminated in Plaintiff's arrest. (DE 161-5 at 2.) On April 10, 2013, Plaintiff visited his friend, Gregory Franks, at an apartment in

---

[1] As described more fully *infra*, Plaintiff listed these individuals and entities as defendants in the latest amended complaint, the operative complaint in this action. (DE 112.)

[2] The operative (latest) amended complaint was filed on July 30, 2019 (DE 112), and is in fact the *third* amended complaint, since it is the fourth such pleading. However, since the docket and other references in the documents refer to the latest complaint as the "second amended complaint" (*see, e.g.*, DE 106, 113, 144) this Court will continue to refer to the operative complaint as the "second amended complaint."

Hempstead, New York. (DE 161-8 at 15:2–4, 16:1–17.) Plaintiff did not believe that Franks lived in this particular apartment, as Franks lived in the area his whole life and Plaintiff "didn't know of him moving." (*Id.* at 16:23–25.) When Plaintiff arrived at the second-floor apartment, Franks and an "older gentleman," whom Plaintiff did not know, were present. (*Id.* at 17:25–25, 18:1–5.) This older gentleman was the owner of the apartment. (*Id.* at 25:20–21.) Franks offered Plaintiff marijuana, and the two smoked together. (*Id.* at 18:7–14.)

After about twenty minutes, Plaintiff heard someone rush up the stairs outside and knock on the apartment door. (*Id.* at 19:1–15.) Franks opened the door, letting in an unknown individual who frantically stated, "they coming, they coming, they coming." (*Id.* at 19:16–19.) Plaintiff took this to mean that the police were en route to the apartment. (*Id.* at 20:1–8.) The individual then ran to the back of the apartment and jumped out of a window. (*Id.* at 20:10–13.) When Plaintiff peeked out of a different window, he saw police who surrounded the apartment building and had apprehended the individual, causing Plaintiff to become "extremely nervous." (*Id.* at 21:1–4; 22:7–8.) Franks and Plaintiff again heard footsteps progressing up the stairs and listened as the police knocked down the door to the neighboring apartment. (*Id.* at 23:22–25, 24: 17.)

About five minutes later, the police knocked on the door of the apartment Plaintiff occupied. (DE 161-5 at 3.) At that point, Plaintiff had moved to the back of the apartment and anticipated jumping from the same window that the individual had jumped from moments before. (*Id.* at 4.) However, Plaintiff saw that "police [were] still everywhere . . . on the ground" and "had the building surrounded," prompting him to turn around. (DE 161-8 at 26:10–12.) As Plaintiff returned to the front of residence, the apartment owner came out of his bedroom and let the police in. (*Id.* at 26:12–15.) Plaintiff then saw Defendant enter the apartment and retreated into the back room towards the window. (*Id.* at 26:12–18.) Before reaching the window, Defendant "pulled [Plaintiff] by [his] shirt," but Plaintiff "struggled him off and . . . grabbed the window ledge." (*Id.* at 28:1–4.) Plaintiff proceeded to put both of his legs out of the window, causing Defendant to grab for Plaintiff's right leg. (*Id.* at 29:15–19.) Plaintiff "pulled away from [Defendant] and kind of swatted his hand away," causing Plaintiff to lose his balance and move his upper body out of the

window. (*Id.*) While Defendant continued to grab Plaintiff's arm, Plaintiff began "flailing," leading to Defendant stepping on Plaintiff's hand, which remained on the window edge." (*Id.* at 30:11–15.) Plaintiff's "initial reaction" was to "let go of the ledge," causing him to fall out of the window and break his ankle. (*Id.* at 30:14–15.) The police then apprehended Plaintiff and took him to Nassau University Medical Center. (DE 161-5 at 3.) At the apartment, the police observed and recovered a white bag containing two handguns, specifically a loaded 45 caliber Glock and a defaced pw Arms 9x18mm. (DE 161-5 at 6.) The police also confiscated crack cocaine and oxycodone from a table inside the apartment. (*Id.*)

Following his arrest, Plaintiff was charged with, among other things, multiple counts of criminal possession of a loaded firearm and multiple counts of criminal possession of a controlled substance. (DE 161-9 at 15.) All charges were subsequently dropped in the interest of justice. (*Id.*)

## PROCEDURAL HISTORY

Plaintiff—incarcerated and proceeding *pro se*—commenced this action on March 1, 2016. (DE 1.) The complaint listed as defendants the County of Nassau, Detective Willie Folks, and the "S[ergeant] of the Hempstead Police Department." (*Id.* at 3.) That same day, Plaintiff moved for leave to proceed *in forma pauperis*, which the district court granted. (DE 2, 6.) On August 17, 2016, Plaintiff filed another complaint (the "second complaint")—which initiated a new action, Civil Action No. 16-CV-4653— concerning the same allegations but naming the following individuals and entities as defendants: the Hempstead Police Department, Nassau County Correctional Facility, and Detectives Darryl Aiken, Jeffrey Larssan, E. Matalone, and Steven Horowitz. That case was later consolidated with the instant action on December 5, 2016. (DE 36.) On November 21, 2016, Plaintiff filed an amended complaint in this action, naming as Defendants the Hempstead Police Department, the Village of Hempstead, Detectives Darryl Aiken, Jeffrey Larssan, E. Matalone, and Steven Horowitz, and Lieutenant Brian Shirmacher.[3] (DE 32.)

---

[3] Although Plaintiff did not list the Nassau County Correctional Facility or Nassau County as Defendants on the amended complaint or the second complaint, the district court construed those complaints—based on the allegations contained therein—as asserting claims against the County of Nassau. (DE 63 at 2 n.4.)

3

On January 13, 2017, each Defendant moved to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  (DE 42, 46.)  The Honorable Joseph F. Bianco referred those motions to the Honorable Steven I. Locke for a Report and Recommendation.  (DE 50.)  In his report, Judge Locke recommended that the amended complaint be dismissed pursuant to Federal Rule of Civil Procedure 41(b) for Plaintiff's failure to prosecute, specifically because he had not filed an opposition to Defendants' motion to dismiss or requested an extension of time to do so.  (DE 55.)  Because, as it turned out, Plaintiff's opposition had been filed but not uploaded to ECF prior to the issuance of Judge Locke's recommendation, Judge Bianco vacated the Report and Recommendation and directed Defendants to reply to Plaintiff's opposition.  (Electronic Order dated Aug. 1, 2017.)  Judge Bianco then granted in part and denied in part Defendants' motion to dismiss; specifically, the district court: (1) dismissed Plaintiff's Section 1983 claims as to Defendants County of Nassau and Village of Hempstead; (2) dismissed Plaintiff's asserted medical claims; (3) dismissed Plaintiff's excessive force and false arrest claims as to all Defendants except Defendant Aiken; and (4) dismissed any state law claims asserted by Plaintiff, to the extent they existed.  (DE 63.)

On March 12, 2018, Plaintiff again filed an amended complaint (the "3/12/2018 amended complaint") naming only Defendant Aiken and Defendant County of Nassau as defendants.  (DE 70.)  In light of Judge Bianco's dismissing Plaintiff's claims against it with prejudice (DE 63), Defendant County of Nassau moved to amend the caption of the 3/12/2018 amended complaint and be removed from the case. (DE 88.)  The district court granted that motion on January 15, 2019.  (DE 92.)  Finally, Plaintiff filed the second amended complaint[4]—the operative complaint in this action—on July 30, 2019, listing Defendant Aiken, Defendant County of Nassau, Defendant Village of Hempstead Defendant Armor Correctional Health of New York, Inc., and Defendant John Doe as defendants.[5]  (DE 112.)

---

[4] As described above (*see* p. 1, n.2, *supra*), despite technically being the third amended complaint, the Court refers to this pleading as the second amended complaint.

[5] It appears that there is an open issue as to whether the defendants named in the second amended complaint, other than Defendant Aiken, remain in this action.  While this issue is not before it, the Court does note that Defendant Village of Hempstead filed a letter stating that it was not a proper party and would only be answering the second amended complaint on behalf of Defendant Aiken.  (DE 107.)  That letter appears to have gone unaddressed.

Defendant Aiken now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 seeking to dismiss Plaintiff's Section 1983 illegal entry, false arrest, and excessive force claims. (DE 161-1.) Plaintiff opposes the motion in its entirety. (DE 161-9.) Judge Brown[6] referred this motion to Judge Locke for a Report and Recommendation. (Electronic Order dated Nov. 3, 2020.) On May 13, 2021, this case—along with the Report and Recommendation referral—was then reassigned to the undersigned. (Electronic Order dated May 13, 2021.)

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The initial burden is on the movant to demonstrate the absence of a genuine issue of material fact, which can be met by pointing to a lack of evidence supporting the nonmovant's claim. *Celotex Corp. v. Catrett¸* 477 U.S. 317, 323, 325 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Once the movant meets its initial burden, the nonmovant may defeat summary judgment only by adducing evidence of specific facts that raise a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250; *Davis v. New York¸* 316 F.3d 93, 100 (2d Cir. 2002). The Court is to believe the evidence of the nonmovant and draw all justifiable inferences in his favor, *Anderson*, 477 U.S. at 255, but the nonmovant must still do more than merely assert conclusions that are unsupported by arguments or fact, *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996); *see Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (noting that a "'party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment . . . mere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact

---

[6] While Judge Bianco originally presided over this case, it was reassigned to the Honorable William F. Kuntz, II upon Judge Bianco's appointment as Circuit Judge. (*See* Electronic Order dated May 31, 2019.) This case was then reassigned to Judge Brown following his appointment as a District Judge. (*See* Electronic Order dated Jan. 27, 2020.)

where none would otherwise exist'") (alteration in original) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).

"It is well established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quotation marks and emphasis omitted). This principle applies when considering motions for summary judgment. *See Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988) ("[S]pecial solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment."). Nonetheless, the "application of this different standard does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 50 (2d Cir. 2003).

## DISCUSSION

Defendant Aiken moves for summary judgment seeking dismissal of each of Plaintiff's claims again him. Interpreting the second amended complaint liberally, Plaintiff appears to assert a Section 1983 claim for illegal entry, false arrest, and excessive force against Defendant Aiken.

### Section 1983

Section 1983 of Title 42 of the United States Code states that:

[e]very person who, under color of any statue, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured[.]

42 U.S.C. § 1983. Section 1983 itself does not create substantive rights, "but rather provides a vehicle by which parties can seek redress for violations of their federally guaranteed rights." *Lopez v. Bay Shore Union Free Sch. Dist.*, 668 F. Supp. 2d 406, 416–17 (E.D.N.Y. 2009) (citing *Morris-Hayes v. Bd. of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 159 (2d Cir. 2005). To prevail on a claim under Section 1983, plaintiff must show that the challenged conduct: (1) was "committed by a person acting under state law"; and (2) "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).

It is undisputed that Defendant was acting under the color of state law when he arrested Plaintiff. The Court is therefore left to determine whether any disputed issues of material fact exist as to Plaintiff's alleged deprivation of constitutional rights.

***Illegal Entry***

The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. amend. IV. Indeed, "[t]he home has properly been regarded as among the most highly protected zones of privacy, and the sanctity of private dwellings is ordinarily afforded the most stringent Fourth Amendment protection." *Chamberlain v. City of White Plains*, 960 F.3d 100, 105 (2d Cir. 2020) (internal quotations and citation omitted). Accordingly, "searches and seizures inside a home without a warrant are presumptively unreasonable." *Kentucky v. King*, 563 U.S. 452, 459 (2011) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)) (internal quotations omitted). However, "this presumption may be overcome in some circumstances because the ultimate touchstone of the Fourth Amendment is reasonableness." *Id.* (citation omitted).

One such circumstance exists when, notwithstanding the absence of a warrant, the authorities are given voluntary consent to search by a person authorized to grant such consent. *United States v. Iverson*, 897 F.3d 450, 458 (2d Cir. 2018); *see United States v. Garcia*, 56 F.3d 418, 422 (2d Cir. 1995) ("It is now well established that while a warrantless search of a home is generally unreasonable and therefore violates the Fourth Amendment . . . an individual may consent to a search, thereby rendering it reasonable.") (citing *United States v. Kon Yu-Leung*, 910 F.2d 33, 40–41 (2d Cir. 1990)); *United States v. Lewis*, 386 F.3d 475, 481 (2d Cir. 2004) (noting that "where [an] authorized party consents to search 'neither a warrant nor probable cause is necessary'"). Freely allowing the government to access and search one's home effectively waives any Fourth Amendment protection to that search. To be sure, however, such consent "must be a product of that individual's free and unconstrained choice, rather than a mere acquiescence in a show of authority." *Iverson*, 897 F.3d at 458 (citations omitted) (cleaned up); *see Fla. v. Bostick*, 501 U.S. 429, 438 (1991) ("'Consent' that is the product of official intimidation or harassment is not consent at all. Citizens do not forfeit their constitutional rights when they are coerced to comply with a request that they would

7

prefer to refuse."). In determining whether valid consent exists, "a court must consider 'the totality of all circumstances' in which the consent was given." *United States v. Pollaro*, 733 F. Supp. 2d 364, 368 (E.D.N.Y. 2010) (citing *Ohio v. Robinette*, 519 U.S. 33, 40 (1996); *Schneckloth v. Bustamonte*, 412 U.S. 218, 245 (1973)). "[T]he ultimate question presented," however, "is whether the officer had a reasonable basis for believing that there had been consent to the search." *United States v. Isiofia*, 370 F.3d 226, 231 (2d Cir. 2004) (internal quotations and citation omitted).

While there is no dispute that the entry was made without a warrant, there is also no dispute that Defendant legally entered the residence, namely, that the apartment owner gave consent to Defendant to search. In his deposition, Plaintiff testified that the police, including Defendant, "knock[ed] on the door to the apartment that [he was] in." (DE 161-8 at 24:24–25.) The apartment owner then "c[a]me out of his room and he open[ed] the door and he let[] [Defendant] in." (*Id.* at 25:24–25, 26:1–2; *see also* DE 161-6 at 4 ("[T]he older gentleman headed to the door and let the police in.").) Nothing in the record suggests that the apartment owner was merely acquiescing to a show of authority, and there is no indication that he was coerced; rather, Plaintiff's testimony establishes that the apartment owner voluntarily allowed Defendant to enter the premises. The Court therefore concludes that Defendant "had a reasonable basis for believing that there had been consent to search" the apartment, and that the search was therefore legal. *Isiofia*, 370 F.3d at 331.

Accordingly, the undersigned respectfully recommends that summary judgment as to the unlawful entry claim be granted in favor of the Defendant.[7]

---

[7] In any event, Plaintiff did not have the reasonable expectation of privacy in the apartment required to maintain an unlawful entry claim. The ability to claim a Fourth Amendment violation based on the reasonableness of a search "depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Minn. v. Carter*, 525 U.S. 83, 88 (1998) (internal quotations and citation omitted); *see United States v. Haqq*, 278 F.3d 44, 47 (2d Cir. 2002) (noting that "the cornerstone of the modern law of searches is the principle that, to mount a successful Fourth Amendment challenge, [the party] must demonstrate that he personally has an *expectation of privacy in the place searched*") (internal quotations and citation omitted) (emphasis in original). While the Supreme Court has held that a person may assert a Fourth Amendment claim for a search of a residence where he is an overnight guest, *Minn. v. Olson*, 495 U.S. 91, 97 (1990), it has also held that a guest who is "merely present with the consent of the householder may not," *Carter*, 525 U.S. at 90. That is to say that "[a]n individual who is a mere guest in an apartment and does not demonstrate a 'degree of acceptance into the household' equal to that of an overnight guest does not have a reasonable expectation of privacy sufficient to make a Fourth Amendment challenge to an entry into the premises." *United States v. Brown*, 596 F. Supp. 2d 611, 628–29 (E.D.N.Y. 2009)

*False Arrest*

Section 1983 false arrest claims stem from the Fourth Amendment's protection against unreasonable seizures—including arrests without probable cause—and are substantially the same as false arrest claims under New York law. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996); *Genovese v. Town of Southampton*, 921 F. Supp. 2d 8, 18 (E.D.N.Y. 2013) ("In New York, the claim colloquially known as 'false arrest' is a variant of the tort of false imprisonment, and courts use that tort to analyze an alleged Fourth Amendment violation in the Section 1983 context.") (citation omitted). To establish a Section 1983 claim for false arrest, plaintiff must show that: (1) defendant intended to confine him; (2) plaintiff was conscious of confinement and did not consent to it; (3) plaintiff did not consent to being confined; and (4) confinement was not otherwise privileged. *Berg v. Kelly*, 897 F.3d 99, 106 (2d Cir. 2018) (citing *Jocks v. Tavernier*, 316 F.3d 128, 134–35 (2d Cir. 2003)).

It is well established that "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or [Section] 1983." *Jenkins v. City of N.Y.*, 478 F.3d 76, 84 (2d Cir. 2007) (internal quotations omitted); *see Weyant*, 101 F.3d at 852 (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994); *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."). An officer "has probable cause for an arrest when he has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime[.]" *Swartz v. Insogna*, 704 F.3d 105, 111 (2d Cir. 2013) (quoting *Weyant*, 101 F.3d at 852) (internal

---

(holding that criminal defendant could not challenge the legality of the apartment search because he was present there for a social visit and did not stay overnight) (citing *Carter*, 525 U.S. at 90); *see Davis v. Abrams*, No. 13-CV-1405 (ARR), 2014 WL 279807, at *7 (E.D.N.Y. Jan. 23, 2014) (dismissing Section 1983 claim for unlawful entry into plaintiffs' mother's apartment because "nothing indicat[ed] that they were more than visitors" because "[t]hey did not live in the apartment and were not even overnight guests"). Plaintiff did not own the apartment, and the record in no way suggests that Plaintiff was an overnight guest rather than a mere visitor. Accordingly, Plaintiff did not have a reasonable expectation of privacy in the apartment and is therefore unable to support an unlawful entry claim for that reason alone.

quotations omitted). Consequently, "[o]nce an item of an incriminating nature is observed in plain view, police officers have probable cause to arrest a suspect." *United States v. Cruz*, 314 F. Supp. 2d 321, 330 (S.D.N.Y. 2004) (citing *Savino v. City of N.Y.*, 331 F.3d 63, 76 (2d Cir. 2003)); *see, e.g.*, *United States v. Echevarria*, 692 F. Supp. 2d 322, 334 (S.D.N.Y. 2010) (officers had probable cause to arrest defendants who dropped a plastic bag full of marijuana on the ground); *United States v. Vasquez*, 864 F. Supp. 2d 221, 239–40 (E.D.N.Y. 2012) (officer had probable cause to arrest defendant because a handgun was in plain view); *Haskins v. City of N.Y.*, 15-CV-2016 (MKB), 2017 WL 3669612, at *9 (E.D.N.Y. Aug. 24, 2017) ("An officer has probable cause to arrest a person for constructively possessing narcotics when the officers find the person in a room or home containing narcotics that are in 'plain view.'").

Notably, "[p]robable cause is a 'fluid' standard that 'does not demand hard certainties or mechanistic inquiries'; nor does it 'demand that an officer's good-faith belief that a suspect has committed or is committing a crime be correct or more likely true than false.'" *Figueroa v. Mazza*, 825 F.3d 89, 99 (2d Cir. 2016) (quoting *Zalaski v. City of Hartford*, 723 F.3d 382, 389, 390 (2d Cir. 2013)). "Rather, it requires only facts establishing 'the kind of fair probability' on which a 'reasonable and prudent' person, as opposed to a 'legal technician[],' would rely." *Id.* (quoting *Fla. v. Harris*, 568 U.S. 237, 244 (2013)); *see Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (noting that if "the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest," the arrest is privileged, and the plaintiff cannot state a claim for false arrest). Indeed, police officers may have probable cause to arrest so long as they acted reasonably and even if, perched comfortably with the benefit of hindsight, they were ultimately mistaken. *See Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) ("Probable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information."); *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (holding that a police officer is "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."); *Peterson v. Cnty. of Nassau*, 995 F.Supp. 305, 313 (E.D.N.Y. 1998) ("[The] validity of an arrest does not depend upon an ultimate finding of guilt or innocence.") (citation omitted).

Here, there are three proffered bases for probable cause to arrest: a bag of guns and ammo; an open arrest warrant; and drugs. The Court considers each independently.

Upon entering the apartment where Plaintiff was arrested, Defendant and his fellow officers found a white bag. Within that white bag were several items of contraband: two loaded handguns and ammunition. (DE 161-5 at 6; *see also* DE 161-9 at 7–8.) Specifically, as conceded by Plaintiff, the items found in the white bag were "[a] Glock handgun 45 caliber, serial # MRX431 [which] was loaded with 9 rounds, and a defaced PW Arms 9x18 mm with one round in the chamber and an empty magazine." (DE 161-6 at 6 (capitalization altered).) However, the record is not clear as to whether the bag was opened (fully or partially), a description of the bag, where the bag was located within the apartment, and whether the seized weapons and ammunition were in fact in plain view. The undersigned therefore concludes that the white bag, and the weapons and ammunition found *within* the bag do not, in and of themselves, constitute sufficient probable cause for the arrest.

Defendant also points to the fact that there was an outstanding warrant for the arrest of Plaintiff. (*See* DE 161-5 at 6.) The record does not, however, support a finding that the arresting officer was aware of the existence of the outstanding warrant before or at the time of the arrest, a *sine qua non* for probable cause to arrest. "'For the purpose of determining the lawfulness of an arrest, probable cause encompasses only that information available to the arresting official prior to and including the point of seizure.'" *Mazurkiewicz v. NYC Transit Auth.,* 810 F. Supp. 563, 568 (S.D.N.Y. 1993) (quoting *Warren v. Dwyer*, 906 F.2d 70, 73 (2d Cir. 1990)). Nothing in the record supports Defendant's position as to *when* the arresting officer had information about the existing warrant.

The Court is left then with the presence of drugs in the apartment. The officers retrieved illicit drugs, namely "crack cocaine and oxycodone" which the officers "observed . . . from a table inside the apartment." (DE 165-5 at 6.) The plain view existence of this contraband— readily apparent illegal drugs on a table—was "sufficient to warrant a person of reasonable caution in the belief that the [Plaintiff] ha[d] committed or [wa]s committing a crime." *Swartz*, 704 F.3d at 111 (citation omitted). That the drugs were on the table and in open view is not contested. No offer of proof or evidence creates a genuine issue of

11

material fact. As such, probable cause existed to arrest Plaintiff, establishing a complete defense for Defendant as to Plaintiff's false arrest claim. *Jenkins*, 478 F.3d at 84. It is of no moment that the drug poession charges against Plaintiff were ultimately dropped. *See Wallace v. Kato*, 549 U.S. 384, 390 (2007) (holding that the proper cause of action following the commencement of criminal proceedings and subsequent drop of charges is a malicious prosecution, not false arrest, claim).

Accordingly, the undersigned respectfully recommends that summary judgment be granted in favor of Defendant as to Plaintiff's false arrest claim.

*Excessive Force*

The Fourth Amendment prohibits the use of excessive force by police officers. *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). An officer's use of force is excessive under the Fourth Amendment "if it is objectively unreasonable 'in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation.'" *Maxwell v. City of N.Y.*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham*, 490 U.S. at 397). This reasonableness inquiry "is necessarily case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Freshwater*, 623 F.3d at 96 (citing *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004)). In determining whether force is constitutionally excessive, courts generally consider "the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of others and whether he was actively resisting arrest." *Pooler v. Hempstead Police Dep't*, 897 F. Supp. 2d 12, 25 (E.D.N.Y. 2012) (citing *Sullivan v. Gagnier*, 225 F.3d 161, 165 (2d Cir. 2000)). Courts must bear in mind that "[p]hysical force is often necessary when effectuating arrests or executing search warrants and, thus, 'not every push or shove' is unconstitutionally excessive, 'even if it may later seem unnecessary in the peace of a judge's chambers.'" *Id.* (quoting *Maxwell*, 380 F.3d at 108).

It cannot be disputed that Defendant's use of force was reasonable in light of the facts and circumstances at the time of Plaintiff's arrest, and thus was not excessive under the Fourth Amendment. Plaintiff's deposition testimony makes clear that he was actively resisting arrest and attempting to evade

Defendant—a central consideration to the Court's excessive force analysis. *See Pooler*, 897 F. Supp. 2d at 25. Prior to Defendant's entry into the apartment, Plaintiff "was in the back room that the fellow [had] just jumped out of" and was already "anticipating jumping [out of the window]." (DE 161-8 at 25:1–9.) Once Defendant entered the apartment, Plaintiff moved towards the window, prompting Defendant to pull Plaintiff by his shirt to stop him. (*Id.* at 27:20–25, 28:1–4.) Plaintiff actively resisted, "struggle[ing] him off and . . . grab[bing] the window ledge," (*id.* at 28:1–4.), until Plaintiff had both his legs out of the window (*id.* at 29:22–23). Plaintiff continued to "pull[] away from [Defendant] and . . . swatted his hand away," eventually causing Plaintiff to lose his balance and move his upper body out of the window. (*Id.* at 29:15–19.) That Plaintiff actively resisted arrest and fled from Defendant weighs in favor of finding that the force employed by Defendant was reasonable given the circumstances. *See Parker v. City of Long Beach*, 563 F. App'x 39, 41 (2d Cir. 2014) (summary order) (holding that Defendants' use of force in slamming Plaintiff on floor and choking him for three seconds was not excessive given, among other things, Plaintiff's flight).

Moreover, Defendant grabbing Plaintiff's shirt as he moved towards, and out of, the window does not rise to the level of excessive force. *See, e.g.*, *Rodriguez v. Village of Ossining*, 918 F. Supp. 2d 230, 238 (S.D.N.Y. 2013) (finding that defendant officer grabbing plaintiff's arm and removing her from a car was objectively reasonable where plaintiff refused to comply with defendant officer's orders); *DePrima v. Village of Catskill*, 105 F. Supp. 2d 75, 79 (E.D.N.Y. 2000) (finding defendant officers did not use excessive force when he "reached into [plaintiff's] vehicle, grabbed and pulled his wrists, dragged him out of his car, and slammed him against the hood" because plaintiff was not struck by any defendant and attempted to start his vehicle and leave the scene); *Azor v. City of N.Y.*, No. 08 CV 04473 (RJD) (LB), 2012 WL 1117256, at * (E.D.N.Y. Mar. 30, 2012) (finding that defendant officer "rough[ly] grabbing plaintiff and pushing him against a vehicle was minimal and reasonable). While Plaintiff testified that Defendant stepped on his hand as it gripped the window ledge—which, standing alone, may be considered excessive—this occurred amid Plaintiff's "flailing" and Defendant's continued effort to apprehend him as he moved out of the window. Under these circumstances, a reasonable jury could not find that the force used by Defendant—grabbing at

13

Plaintiff's shirt and stepping on his hand as he was flailing to evade the Defendant—was objectively unreasonable and excessive. *Maxwell*, 380 F.3d at 108.

In sum, there is no reasonable or plausible dispute that Defendant's use of force in apprehending Plaintiff was reasonable and not excessive. Accordingly, the undersigned respectfully recommends that summary judgment be granted in favor of Defendant as to Plaintiff's excessive force claim.

## CONCLUSION

Based on the foregoing, it is respectfully recommended that Defendant's motion for summary judgment be granted in its entirety and that Plaintiff's claims asserted in the second amended complaint against Defendant Aiken be dismissed with prejudice.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel for each of the parties. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated:   Central Islip, New York
       August 31, 2021

/s/ *James M. Wicks*
       JAMES M. WICKS
    United States Magistrate Judge